David C. Wakefield, Esq.    Bar #: 185736
Law Offices of David C. Wakefield
10620 Treena Street, Suite 230
San Diego, CA 92131
Telephone:  619.241.7112; Facsimile:  619.342.7755
E-mail:     dcw@DMWakeLaw.com;  wakefieldlawassistant@gmail.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED AFRICAN-ASIAN ABILITIES CLUB, ON BEHALF OF ITS MEMBERS AND ITSELF; DAVID SINGLETARY, FOR HIMSELF AND THOSE SIMILARLY SITUATED**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**SHOHREH MALEK; MOOSA MALEK; MALEK PROPERTY MGT. INC.; RACHEL NEWLIN; MINA MALEK; AND DOES 1 THROUGH 10, Inclusive**<br><br>**Defendants.** | **Case No:**<br><br>**COMPLAINT**<br><br>**DISCRIMINATORY PRACTICES**<br>**[US Fair Housing Act of 1988 [**42 U.S.C. §§ 3600 et seq, §3604(c), §3604(f)(1-3), et seq.; CA Government Code 12925, 12927, 12955; CA Civil Code §§ 51, 52, 54.3**<br><br>**DEMAND FOR JURY TRIAL** |

### INTRODUCTION

1.    Plaintiffs' case involves class system-wide housing discrimination by Defendants in violation of the U.S. Fair Housing Act Amendments of 1988 (FHAA), the California Fair Employment and Housing Act (CFEHA), the CA

1

Unruh Civil Rights Act (UCRA), the CA Disabled Persons Act (CDPA), and Title III of the Federal Americans with Disabilities Act (ADA).  For almost 25 years the broad sweep of Congress to eliminate disability discrimination has boiled down to lawsuits concerning architectural barrier removal. Most of these lawsuits settle quickly. Due to the fast settlement, there is the perception that these suits are a scam. The broad scope of disability rights laws has been muted by the barrier removal controversy. ADA Title III focuses on access to goods and services. FHAA concerns access to housing and rental services. New construction and barrier removal rules are just two methods of achieving access. This case is about full and equal access to rental services by imploring the methods of ADA auxiliary aids, ADA reasonable modifications, FHAA reasonable accommodations and barrier removal.  Plaintiffs make the following allegations in this civil rights action:

## JURISDICTION AND VENUE

2.       The federal jurisdiction of this action is based on the 42 U.S.C. §§ 3601, 3604 et. seq. - the U.S. Fair Housing Act Amendments of 1988, and 42 U.S.C. § 12101 et. seq., the federal Americans With Disabilities Act.  Venue is proper in this United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b), because a substantial part of Plaintiffs' claims arose within said Judicial District.  Defendants' property that is the subject of this action is an apartment complex located in the present Federal judicial district.  Defendants' apartment complex consists of four (4) or more residential units. The Plaintiffs allege that the primary jurisdiction doctrine does not apply in this case because the court can apply the current ADA Title III relations to resolve the effective communication issues related to the websites. The Plaintiffs allege the due process rights of the Defendants have not been violated because of the Department of Justice has informed the public that websites must comply with the ADA since 1996. The

2

Case#:
COMPLAINT

Plaintiffs allege that the Department of Justice no longer desires to issue regulations regarding the ADA and websites.

## SUPPLEMENTAL JURISDICTION

3.      This United States District Court for the Northern District of California has supplemental jurisdiction over the California state claims as alleged in this Complaint pursuant to 28 U.S.C. § 1367(a).  The reason supplemental jurisdiction is proper in this action is that because all the causes of action or claims derived from federal law, and those arising under CA state law, as herein alleged, arose from common nucleus of operative facts.  The common nucleus of operative facts, include, but are not limited to, the incidents where Plaintiffs and at least one of the organizational members were denied full and equal access to Defendants' rental services and/or goods in violation of both federal and state laws when he attempted to enter, use, and/or exit Defendants' facilities where said rental services and goods were located or should have been provided.    Further, due to this denial of full and equal access, Plaintiffs and other individuals with disabilities were injured.  Based upon said allegations, the California causes of actions, as stated herein, are so related to the Federal claims that they form part of the same case or controversy, and these claims would ordinarily be expected to be tried in one judicial proceeding.

## NAMED DEFENDANTS AND NAMED PLAINTIFFS

4.      The term Plaintiffs as used herein specifically include the corporate Plaintiff entity known as the United African-Asian Abilities Club, On Behalf Of Its Members And Itself; David Singletary, For Himself And Those Similarly Situated. Sue Maralit, Mary Wambach, Theodore Arthur Pinnock, Jessie James Lee and Jack Pinnock are referred to herein as members of Plaintiff Association.

3

Case#:
COMPLAINT

5.      Plaintiff United African-Asian Abilities Club is a Foreign California registered corporation.  The individual Plaintiffs are members of the Plaintiff organization known as the United African-Asian Abilities Club.  The Plaintiffs allege that the incidents of discrimination that are alleged herein are not isolated. Each time the Plaintiffs or the members visit the actual rental office or the websites they experience discrimination. This complaint is not alleging that the Defendants must add more services then what they currently provide. The auxiliary aid claim requires the Defendant to provide new services to enable people with disabilities to access the rental services that Defendants decide to provide. Each member that is alleged herein had actual knowledge that the rental office was not accessible, the Defendants did not provide a way to request a reasonable accommodation, the Defendants did not provide the auxiliary aids and did not make reasonable modifications. Therefore, the members did not go to the rental offices because they knew that the rental offices and the websites were not accessible. Therefore, the Plaintiffs allege that they were not required to visit the rental offices because it would be a futile gesture. But the members did visit the websites multiple times.

6.      Plaintiffs are informed, believe, and thereon allege that named Defendants SHOHREH MALEK; MOOSA MALEK; MALEK PROPERTY MGT. INC.; RACHEL NEWLIN; MINA MALEK are the owners, operators, and/or lessors of the real property located at 810 Coleman Ave, Menlo Park, CA 94025 (hereinafter referred to as the Property).  Plaintiffs are informed, believe, and thereon allege that named Defendants SHOHREH MALEK; MOOSA MALEK; MALEK PROPERTY MGT. INC.; RACHEL NEWLIN; MINA MALEK are the operators of the apartment rental business known as Garden Oaks Apartments located at 810 Coleman Ave, Menlo Park, CA 94025.  The Defendants have the following actual places where they offer rental services 810 Coleman Ave, Menlo Park, CA 94025

4

Case#:
COMPLAINT

and 4966 El Camino Real #209 Los Altos CA 94022.  The Defendants operate, or they control the following websites http://mpmcorp.vflyer.com/home/Listing.jsp?acctId=1724562; https://www.zillow.com/homedetails/810-Coleman-Ave-Menlo-Park-CA-94025/2103280966_zpid/; https://www.apartments.com/garden-oaks-apartments-menlo-park-ca/d5pltwj/; https://www.apartmentfinder.com/California/Menlo-Park-Apartments/Garden-Oaks-Apartments and those listed in Exhibit B to this Complaint.  The websites have a nexus or some connection to the actual places because the websites refer to the rental services that are offered at the actual rental offices. Therefore, the Plaintiffs allege that the websites are places of public accommodation. This complaint refers to certain websites. The websites may be owned by a third party that allows the user to log in and modify content. The Defendants control the websites to the extent that they can change the content to make modifications to comply with the ADA. Therefore, the Plaintiffs allege that Defendants can modify the area of the website to improve access for people with disabilities.  ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by *any person who owns,* leases (or leases to), *or operates a place of public accommodation.*" 42 U.S.C. § 12182(a). Public accommodation includes the "professional office of a health care provider." 42 U.S.C. § 12181(7)(F). Therefore, "[i]n order to be subject to Title III of the ADA, a potential defendant must be '[a] person who owns, leases (or leases to), or operates a place of public accommodation.' " Therefore, this paragraph names the individuals that own the corporations or the entities that own and operate the property and the websites.

7.      Defendants SHOHREH MALEK; MOOSA MALEK; MALEK PROPERTY

Case#:
COMPLAINT

MGT. INC.; RACHEL NEWLIN; MINA MALEK are, and at all times mentioned herein were, a business or corporation or franchise, organized and existing and/or doing business under the laws of the State of California. Defendants Does 1 through 10, were at all times relevant herein subsidiaries, employers, employees, and/or agents of the named Defendants. Plaintiffs, including Plaintiff Members and Plaintiff Club, are informed, believe and thereon allege, that Defendants and each of them herein were, at all times relevant to the action, the owner, lessor, lessee, franchiser, franchisee, general partner, limited partner, agent, employee, representing partner, or joint venturer of the remaining Defendants and were acting within the course and scope of that relationship. Plaintiffs, including Plaintiff Club, are further informed and believe, and thereon allege, that each of the Defendants herein gave consent to, ratified, and/or authorized the acts alleged herein to each of the remaining Defendants.

8.     Plaintiffs allege that Defendants have been and are engaging in a system-wide failure to provide the required non-obvious and obvious reasonable accommodation services, failure to provide the required modification services, and a failure to remove architectural, communication, and other access barriers to Defendants' rental services, which constitutes discrimination against the Plaintiffs.   Plaintiffs also allege Defendants' failure to follow the required policies to comply with the FHA, ADA, CPDA and UCRA, and/or Defendants failure to adopt policies in compliance with said laws also constitutes discrimination against the Plaintiffs. The Plaintiffs allege that Defendants are required to make obvious reasonable accommodations for people with disabilities looking to use the rental services provided by the Defendants. Therefore, the Plaintiffs are not required to make a request for obvious reasonable accommodations.

6

Case#:
COMPLAINT

## CONCISE SET OF FACTS

9.     MALEK PROPERTY MGT. INC. was incorporated on May 10, 2001. Defendant MALEK PROEPRTY MGT. INC. manages multiple apartments in Northern California as well as in Reno, Nevada. It is the operator of the apartment rental businesses known as Garden Oaks Apartments located at 810 Coleman Ave, Menlo Park, CA 94025.  Defendant MALEK PROPERTY MGT. INC. maintains a website at http://mpmcorp.vflyer.com/home/Listing.jsp?acctId=1724562.  The Plaintiff Club investigated the property in March 2018.  Club member Sharon investigated the property on the Internet.  Club member Theodore Pinnock investigated the property.  The results of the research from Miss Riguer are contained in the Exhibit B to this complaint. Club informed all of the members that the property was not accessible. Defendants operate an apartment property. The property is located at 810 Coleman Ave, Menlo Park, CA 94025.  The property was built in 1963 and has 2 stories with 75 units. The rent is approximately: 1 Bedroom $2,295 2 Bedrooms $2,800 – 2,995.  The internet provides a wealth of information regarding the property. The internet advertises that the property has amenities that include: Swimming Pool and BBQ, Extra Parking Space, Pet Policy; No Pets Allowed, Parking Surface Lot and Covered, 1 space; Assigned Parking. Laundry Facilities, Maintenance on site, Property Manager on Site, Bilingual, Recycling, Storage Space, Courtyard, Grill, Picnic Area, Pool, High Speed Internet Access, Heating, Ceiling Fans, Smoke Free, Cable Ready, Storage Units, Tub/Shower, Dishwasher, Disposal, Granite Countertops, Kitchen, Microwave, Oven, Range, Refrigerator, Instant Hot Water, Carpet, Vinyl Flooring, Dining Room, Built-In Bookshelves, Walk-In Closets, Linen Closet, Window Coverings, Accent Walls, Balcony, Patio, Yard, Lawn, Barbecue Area, Barbecue/Grill, Garden.  The property

7

Case#:
COMPLAINT

advertises on apartments.com, apartmentratings.com, forrent.com, apartmentfinder.com, yelp.com, apartmenthomeliving.com, zumper.com, mapquest.com, padmapper.com, foursquare.com, yellowpages.com, apartmentadvisor.com.  It is very important to know that on apartments.com, forrent.com, apartmentfinder.com, apartmenthomeliving.com, there is the equal housing opportunity logo.  The plaintiff alleges that there is disparate treatment on the internet related to the amenities being offered to people without disabilities and people with disabilities. For example, the tow signage was not installed. The accessible parking space had an access aisle, which was not van accessible. The aisle did not have the "no parking" included in the access aisle. The office had a high threshold. There was no International Symbol of Accessibility signage.  The Internet does not state the accessible amenities at all.  Also, the statement the "equal housing opportunity statement" is misleading. In fact, the property is not completely accessible. All the above facts and the facts stated herein have a disparate impact on the disability community.  On March 14, 2018, Plaintiffs made a request for reasonable accommodation in person. On April 6, 2018, said request was emailed and on April 20, 2018 it was mailed.  In this case, Plaintiff Club investigated the subject apartments and found Defendants had no TTY/TDD, they had no manner of providing rental services at the rental office despite steps leading thereto and the Internet advertising had no auxiliary aid information.  Plaintiff Singletary is unable to walk any distance.  Plaintiff Singletary said physical impairments substantially limit one or more of the following major life activities including but not limited to: walking.  Additionally, Plaintiff Singletary upper body range of motion and the dexterity of their hands are substantially limited.  Plaintiff Club Member Theodore Pinnock also has disabilities with respect to substantial impairment of his speech. Plaintiff Club has been assisting Plaintiffs in their search for an accessible

8

Case#:
COMPLAINT

apartment.  Club Member 008 and Club Member 010 help Plaintiffs in attempting to find accessible apartments for rent.  Club Member 010, Sue Maralit, also has a disability.   Plaintiff Club's members Theodore Pinnock and Mary Wambach have substantial impairment of their speech.   The Internet does not state the accessible amenities at all.

10.    Defendants operate a residential apartment rental property. Plaintiffs were also expressly deterred from Defendants' property due to Plaintiffs' knowledge of the existence of access problems to Defendants' rental services and facilities. Defendants' property has an office where rental services are made available.  Club assisted Plaintiffs in determining if the subject apartments were accessible for Plaintiffs.  Defendants' facilities have problems that prohibit Plaintiffs to access the property that relate to Plaintiffs' disabilities, that prevents equal access by Plaintiffs to Defendants' rental services, and which also currently deters Plaintiffs' attempts to visit to Defendants' property.  Plaintiffs would in the future experience hardship, difficulty, and distress as a result of these existing access problems at Defendants' property.  Defendants operate a residential apartment rental property consisting of more than 4 residential units. Plaintiffs were also expressly deterred from Defendants' property due to Plaintiffs' knowledge of the existence of access problems to Defendants' rental services and facilities.

11.    In this case, the Plaintiff Club's main purpose is to make sure the apartments are fully accessible to people with disabilities, therefore, the Plaintiff Club is not indifferent to returning to the property and the Plaintiff Club's intent to return is genuine.  See Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 953 (2011). Seeking to avoid unreasonable burdens on ADA plaintiffs, Title III explicitly provides that it does not require "a person with a disability to engage in a *futile gesture* if such person has actual notice that a person or organization ... does not

9

Case#:
COMPLAINT

intend to comply" with the ADA. *Id.* (emphasis added). The "futile gesture" language of Title III is taken from *Teamsters v. United States,* 431 U.S. 324, 366, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In *Teamsters,* the Court held that plaintiffs who did not actually apply for promotions could nevertheless challenge the employer's racially discriminatory seniority system under Title VII of the Civil Rights Act of 1964, Pub.L. 88–352, *codified as amended at* 42 U.S.C. § 2000e et seq., if they could show that they would have applied for the job if not for the employer's discriminatory practices. *See Teamsters,* 431 U.S. at 367–68, 97 S.Ct. 1843. The Court reasoned that "[w]hen a person's desire for a job is not translated into a formal application *solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination* as is he who goes through the motions of submitting an application." *Id.* at 365–66, 97 S.Ct. 1843 (emphasis added). Congress specifically intended that *Teamsters'* "futile gesture" reasoning be applied to ADA claims. *See* H. Rep. No. 101–485(II) at 82–83 (1990) *reprinted in* 1990 U.S.C.C.A.N. 303, 365 ("The Committee intends for this doctrine to apply to this title"); S.Rep. No. 101–116 at 43 (1989). Thus, under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation and is thereby deterred *1137 from visiting or patronizing that accommodation, the plaintiff has suffered an injury. *See also Davoll v. Webb,* 194 F.3d 1116, 1132–33 (10th Cir.1999) (disabled employee not required to initiate interactive process leading to reasonable accommodation where employer has made clear it will not engage in the interactive process). So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues.  Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133 (2002).  In this case, Plaintiff Members became aware of the discriminatory conditions as alleged herein when the Plaintiff Club investigated the

10

property and the rental services and determined that the Plaintiff Members would not be able to use the rental services due to the discriminatory conditions. Therefore, Plaintiff Members were deterred from visiting the properties.  Thus, Plaintiff Members were not required to actually visit the properties.  Maralit, Plaintiff Members and Plaintiff Club have specific plans to visit at the conclusion of this case to obtain rental information and to verify that the Defendants have ceased its discriminatory conduct by removing the barriers to access to Defendants' rental services.

12.   When Plaintiff Club association tested Defendants' facilities it discovered that Club members with similar disabilities located in the immediate area would be denied equal access to and would have difficulty using Defendants' rental housing' services and facilities.

13.     Plaintiff Club diverted its time and resources because of service, policy, program and physical barriers at Defendants' property. As a result of Defendants improper actions, Plaintiff Club suffered injury and suffered monetary damages due to the diversion of the Club's resources.  Club personnel conducted detailed Internet searches to determine if Defendants provide large print, deaf interpreter, therapy animal, the required reasonable accommodation policy, and required reasonable modification policy.   Further, the Club retained contractors to investigate said policies, to survey the property, to photograph the property, to investigate when the property was constructed, to investigate the property ownership and to have an access report prepared.  Due to these necessary activities, Plaintiff Club's time and resources were diverted from its normal purposes.   Plaintiff Club also diverted staff to investigate Defendants' Internet presence to determine compliance with the FHA and ADA. Plaintiff Club created a report of the findings which also included Plaintiff Club's investigation into Defendants' written material such as brochures,

Case#:
COMPLAINT

rental applications and leases. Plaintiff Club's findings regarding Defendants' rental services and facilities were incorporated into an Access Report. See Exhibit B to the Complaint.  Moreover, Plaintiff Club made an oral investigation to ascertain Defendants' companion animal, deaf interpreter and reasonable accommodation and reasonable modification policies. The Club's findings were:  Defendants' facility does not have anything posted regarding service animals.  Defendants' facility does not have any hearing-impaired smoke/fire alarms located at the facility. Defendants' facility does not have a TTY machine available on-site.  Defendants do not have any reasonable accommodation policy and reasonable modification policy. Plaintiff Club also caused an access consultant to be retained to survey Defendants' facility.  The Access Report is Exhibit B to the Complaint.

14.     Plaintiffs can prove these barriers to equal access to Defendants' rental services exist since the Plaintiffs confirmed the policy, service, program, communication, architectural, and other access barriers exist at Defendants' facility. Plaintiffs specifically allege that Defendants knew, to a substantial certainty, that the policy, service, program and architectural barriers precluded wheelchair access by the disabled including Plaintiff Members.  Plaintiffs will prove that Defendants had actual knowledge that the architectural barriers precluded access.

15.     Second, due to the abundance of disability rights information and constant news coverage of disability discrimination lawsuits, Defendants had actual knowledge of the state disability laws and access requirements and decided deliberately not to remove policy, service, program and architectural barriers. Plaintiffs and Plaintiff Association allege any alternative methods preclude integration of wheelchair patrons, as it requires them to use second-class facilities. Also, expert testimony will show the facility contained inaccessible features.

Case#:
COMPLAINT

**FHA REQUESTS**

16.    Plaintiffs allege that there is no need to make a request for reasonable modifications and for auxiliary aid.

17.    Plaintiffs allege that there is no need to make a request for a reasonable accommodation when the accommodation is obvious. Plaintiffs allege that contact information on the internet is obvious. The public does not need to request the number from the apartment owner or operator desiring to rent a place. The apartment provides the number on the website. Therefore, it is obvious that the apartment must provide the effective communication for people that are deaf or with speech impediment on the website without a request. For example, the apartment must provide with TTY numbers or the video phone texting number for people that are deaf and people with speech impediments. Moreover, it is obvious that the apartment must make the rental services accessible without any request.

18.    Furthermore, the apartment must remove architectural barriers and communication barriers without request.

19.    The Plaintiffs are alleging that an accommodation is obvious when the whole group requires it. For example, for people without disabilities steps are required to get up to the second level. The public would be very disturbed if they were required to request steps to go up to second level. When the accommodation is specific to the person with a disability then the person must make a request because the accommodation is not obvious. In this case, the Plaintiffs decided to make a request as a courtesy.  On March 14, 2018, Plaintiffs made a request for reasonable accommodation in person. On April 6, 2018, said request was emailed and on April 20, 2018 it was mailed.  The UAAAC called the following number: (650) 2412576. The UAAAC member called on April 24, 2018 at 10:38 AM. A woman named Christine answered the phone. The member requested the TTY number. Christine

13

Case#:
COMPLAINT

stated she don't know what is the TTY number.

20.    Plaintiffs and other prospective disabled renters are entitled to the protections of the FHA provisions with respect to reasonable accommodation and reasonable modification provisions during the application process.   Prospective renters with disabilities desire to live in accessible housing.  Under the FHA, the above listed barriers to rental services can be addressed by the reasonable accommodation and reasonable modification requirements under the FHA.   Defendants failed to provide to Plaintiffs the required FHA reasonable accommodation and modification policies and failed to provide the requested reasonable accommodation and modifications.

21.     Plaintiffs allege that Defendants also fail to have the required written policies and practices to receive and process Plaintiffs reasonable accommodation and modification requests.

22.    Based on these facts, Plaintiff Members and Plaintiff Club, allege they were discriminated against each time Plaintiffs attempted to patronize Defendants' rental services and facilities.

**STANDING**

23.    Ms. Anna Wiggins is the sister of one of the UAAAC members. Ms. Doris Hoyle is the mother of one of the UAAAC members. Both Ms. Wiggins and Ms. Hoyle are members of the UAAAC. Both Ms. Wiggins and Ms. Hoyle have standing because they are associated with a person with a disability and they both suffer discrimination because they are associated with a relative with a disability. Plaintiff Members has sued under the FHA and Title III of the ADA, seeking declaratory and injunctive relief. ADA Title III authorizes a person with a disability to seek injunctive relief if the person "is being subjected to discrimination on the basis of disability" or "has reasonable grounds for believing that such person is

14

Case#:
COMPLAINT

about to be subjected to discrimination." 42 U.S.C. § 12188(a)(1). A Plaintiff Member is being subjected to discrimination on the basis of his disability" or a Plaintiff Member has reasonable grounds for believing that he is about to be subjected to discrimination."

A. Plaintiff Singletary. Singletary desires to find accessible apartments online. Singletary goes online to look at the photographs of the apartments to determine if they are accessible before he goes to them. Singletary went to each of the websites managed by the Defendants and Mr. Singletary reviewed all the photographs. The photographs did not show any accessible features for wheelchair users. Singletary was deterred from going to the apartments because the photographs did not show any accessible features. Moreover, Singletary knew that the property was not accessible.

B. Plaintiff Club Member Theodore Arthur Pinnock. Pinnock a has severe speech impediment. He uses texting to communicate with people that do not know him. Pinnock went to the websites for the apartments managed by the Defendants. Mr. Pinnock did not find any way to text concerning the apartments. Mr. Pinnock is a disbarred lawyer residing in the Philippines. Mr. Pinnock is currently eligible to be reinstated as a lawyer. Mr. Pinnock needs to move back to California to meet all of the State Bar reinstatement requirements. Mr. Pinnock has a skype US number. Also, Mr. Pinnock has a cellphone for texting. Moreover, Mr. Pinnock has texting online. Mr. Pinnock was not able to text the apartments.

C. Jack Pinnock. Jack is an officer of UAAAC. Jack has low vision. Jack requires large print on websites. The websites managed by the Defendants contain small print on each of the bottom pages of the websites. Jack had difficulty reading the print.

15

Case#:
COMPLAINT

D. Jessie James Lee. Lee is a member of UAAAC. Lee has low vision. Lee requires large print on websites. The websites managed by the Defendants contain small print on each of the bottom pages of the websites. Lee had difficulty reading the print.

E. Mary Wambach. Wambach has complete deafness. She uses video phone texting to communicate. Video phone texting requires an internet connection and requires the recipient to have a deaf interpreter online. Wambach contends that the Defendants have the resources to hire a new employee to do clerical work, receptionist, office work or managerial work and can require the new employee to know sign language. That person can be available to answer all of the video calls. Wambach went to the websites to find video texting, TTY, the California Relay System or any other way of texting. Wambach did not find any such communication method on the website.  Therefore, Plaintiff Members has statutory standing under Title III of the ADA. Also, Plaintiff Club has standing to sue on its own behalf. Plaintiff Club also has standing to sue on behalf of its members as stated herein. Organizational standing is separate from the standing of the organization's members, turning instead on "whether the organization itself has suffered an injury in fact." *Smith v. Pacific Properties and Development Corp.,* 358 F.3d 1097, 1101 (9th Cir.2004) (citing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 378–79, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)). Section 3602(d) of the FHA defines a "person" who may sue under the Act to include "corporations" and "associations." 42 U.S.C. § 3602(d) (1988). As a corporation, plaintiffs are "persons" protected by the statute. *See Havens,* 455 U.S. at 378–79 & n. 19, 102 S.Ct. 1114; *Walker v. City of Lakewood,* 272 F.3d 1114, 1123, n. 1 (9th Cir.2001). Plaintiffs must therefore satisfy the requirement for individual standing: "a demonstration of concrete and particularized injury giving." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7

Case#:
COMPLAINT

L.Ed.2d 663 (1962); *see also Havens,* 455 U.S. at 378–79, 102 S.Ct. 1114. In *Pacific Properties,* the Ninth Circuit reaffirmed its holding in *Fair Housing of Marin v. Combs,* 285 F.3d 899, 905 (9th Cir.2002) that an organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular housing discrimination in question. *Pacific Properties,* 358 F.3d at 1101 (citing *Fair Housing,* 285 F.3d at 905). Testers have played a long and important role in fair housing enforcement, stemming from the Supreme Court's three-decade-old determination that with the Fair Housing Act, Congress intended to establish a broad set of rights to be free from housing discrimination, and that as a general rule, courts should not erect standing barriers—other than the minima required by Article III— to those seeking to vindicate these rights. *See Havens,* 455 U.S. at 372–73, 102 S.Ct. 1114; *see also Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 103, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). The high court more recently cautioned that courts be no less generous in interpreting provisions added to the Fair Housing Act by the Fair Housing Act. *See City of Edmonds v. Oxford House, Inc.,* 514 U.S. 725, 731, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995). Here, Plaintiff Club is an organization that advocates on the behalf of its members with disabilities when their civil rights and liberties have been violated.  Members of that organization include members that have disabilities that relate to the service, policy, programs and physical accessibility barriers at the property; those disabilities include, but are not limited to, sight, mobility disabilities and hearing disabilities.  Plaintiff Club has members who have been deterred from accessing Defendants' apartment rental services within Defendants' facilities. The Club or Association is an international group that was started in 2011. One of the Club's core missions is to reduce charitable or public assistance dependence by people with mental and physical conditions by promoting

17

business and employment opportunities. Another critical mission of the Club is to provide written testimony concerning proposed laws related to people with disability conditions. Further, another core mission of Plaintiff Association is to provide counseling and referral housing services to minorities with sight, mental, hearing and physical disability conditions. The Club's mission is frustrated by the rampant violations of the Fair Housing laws. In fact, Plaintiff Club association started its mission in 2011, but through its past experience believes it is very difficult or futile for the most part. Another core mission of Association is searching for accessible businesses and giving awards to them for being voluntarily compliant. These businesses include apartments. As alleged with specificity herein, Plaintiffs had to divert time and resources to investigate Defendants. As in *Smith*, 358 F.3d 1105, a further mission of the group is to eliminate disability discrimination. These missions are not abstract social interests of the Club. Without access to housing people with disabilities cannot live alone.  In the present case, Plaintiff Club members have associational standing to maintain this action.  The U.S. Supreme Court has set out three requirements for an associational plaintiff to have standing under U.S. Const. art. III to sue on behalf of its members: (1) its members must have standing to sue on their own.  The United African-Asian Abilities Club's members have mobility, hearing, sight and other disabilities covered by the Fair Housing Act; (2) the interests he/she seeks to protect must be germane to the organization's missions. The missions of United African – Asian Abilities Club are stated herein and are germane; and (3) neither the claim asserted nor the relief requested may require the participation of individual members in the lawsuit.  Such associational standing requires that at least some members would have standing to sue in their own right. The first two factors are required by the Constitution and the third is a judicially self-imposed limit on the exercise of federal jurisdiction that Congress may remove

Case#:
COMPLAINT

by statute.  In determining whether Plaintiff Club has standing under the Fair Housing Act, we conduct the same inquiry as in the case of an individual: Has the plaintiff " 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction"? *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S., at 261, 97 S.Ct., at 561 (emphasis omitted), quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). There can be no question that the Club has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests, see *Sierra Club v. Morton*, 405 U.S., at 739, 92 S.Ct., at 1368. In the present lawsuit, Plaintiff Club is only seeking organizational damages and injunctive relief and does not seek to recover damages for its individual members.

24.     Initially in year 2011, Plaintiff Club was founded as a non-incorporated association by two African American men that use a wheelchair and one mother of a young Black man that uses a wheelchair.   Plaintiff Club created a blog on February 17, 2012.  Plaintiff Club's blog address is uaaaclub.blogspot.com.   Plaintiff Club's blog documents the discrimination based by Blacks and Asians with disabilities and the fact that Blacks and Asians with disabilities make up the largest minority within the world.  Plaintiff Club provides information about how minorities with disabilities can work, provides information about Filipinos with Autism live within Carmona, Cavite, provides information on the Asian with disabilities outreach think tank. Plaintiff Club has published too many articles to list here, but a majority of the articles were posted before September 25, 2016. The Club has a detailed method for determining what company will receive a YES award. Plaintiff Club's YES award provides recognition to those companies or businesses that have undertaken

Case#:
COMPLAINT

substantial voluntary disability compliance.  The award method includes having a Club member test access compliance by visiting the property and conducting a survey. Also, the Club requests information from the company. The company does not need to request to award or does not need to compensate the Club for the award. Plaintiff Club bears all the costs of the YES award recognition.  Thereafter, all of the information is evaluated by the Club awards committee.  All of the awardees are posted on the Plaintiff Club's blog.  During the last two years the Club provided accessibility YES awards to the over Sixty (60) companies or businesses.  Between 2014 and 2015 the Club also conducted lobbying efforts at the state and national level related to disability rights.  In year 2015, the Club started to help Filipino with disabilities living in the Philippines to market goods and ladies bags. The Club created the ladies bag catalog on September 1, 2015 to market the ladies bag.  Also, Plaintiff Club conducts an educational program for children with or without disabilities living in the poor area of the Philippines and the Club also creates job training programs for the children that are 14 and above. The bag marketing and the children programs have suffered because the Plaintiff Club has had to divert time and other resources to this case. Between year 2011 to year 2016, Plaintiff Club also assisted people with disabilities looking for accessible apartments. Before 2016, the Club helped people with disabilities living in Los Angeles related to finding accessible apartment without any success.  Plaintiff Club keeps the records of membership. The Club members include, but are not limited to, Member 001, a wheelchair user; Member 002, a wheelchair user; Member 003, a mother of a person with cerebral palsy; Member 004, a wheelchair user; Member 005, a person with cerebral palsy; Member 006, a person with cerebral palsy; Member 007, sister of a young man with cerebral palsy; Member 008, a woman with one leg; Member 009, a deaf person; Member 010, an advocate; Member 011, a person with cerebral palsy;

Case#:
COMPLAINT

Member 012, a daughter of a person with cerebral palsy; Member 013, a person with a sight disability;  Member 014 an advocate; Member 015, a person with a sight disability; and Member 016, a person with a sight disability.    The Club is a non-profit corporate entity that has the authority to conduct business within California. Before February 2015, more than two members were responsible for issuing the YES awards, for finding apartments, for lobbying and for marketing for the Club. The Club wrote a request by email to the defendant requesting the reasonable accommodation. No one ever responded to the request. When the Club was created back in 2011, the Club was not organized for the purpose to file lawsuits, rather the Club was organized, in part, to advocate for minorities with disabilities. However, the Club discovered that most people do not listen to minorities with disabilities without a lawyer. In the year 2011, CA SB 1186 was moving through the California Legislature. The 3 Club founders felt minorities were not represented in opposing SB 1186. The Founders also created the Plaintiff Club in part to oppose the bill. On February 19, 2012, the Club started assisting its disabled members in finding accessible apartments. On February 27, 2012, the Club wrote a report. The report found that access to residential apartments is very hard to find for minorities with disabilities. On March 24, 2012, the Club created the goal of marketing goods made by people with disabilities from the Philippines. On May 29, 2012, the Club created Awardee Tester Guidelines. On January 22, 2013, the guidelines were updated. The Club spent the remainder of year 2012 and year 2013 evaluating companies for access issues and organizing the Club. In year 2014 the Club did further evaluations. On February 14, 2014, the Club started lobbying against SB 67, AB 54, AB 56 and SB 251. The Club emailed, faxed and mailed letters to all of the elected California politicians and disability groups. From February until September the Club conducted lobbying.

21

Case#:
COMPLAINT

## NOTICE AND WHAT CLAIMS PLAINTIFFS ARE ALLEGING AGAINST EACH NAMED DEFENDANT

25.    Plaintiffs are not required to provide notice to the defendants prior to filing a complaint.   Plaintiffs aver that the Defendants are liable for the following claims as alleged below:

## DISCRIMINATORY PRACTICES IN EFFECTIVE COMMUNICATION

FIRST CAUSE OF CAUSE OF ACTION - FAILURE TO EFFECTIVELY COMMUNICATE

CLAIM I: **Auxiliary Aids**

26.    The ADA requires the Defendants to provide effective communication to the Plaintiffs and to people with disabilities. When Defendants communicate with perspective tenants on the Internet or at the rental office, the communication must be effective. One way of being effective is by providing the necessary auxiliary aids. Plaintiffs allege that removing non-readable text from websites, providing the TTY number or providing the text messaging system and large web font sizes are necessary to communicate with perspective renters that are deaf, blind, low vision, or have a speech impairment. The Plaintiffs are not alleging that the Defendants are required to provide a specific auxiliary aid. The Defendants have the right to decide what auxiliary aid will be provided but the aid must be effective. In this case, the Plaintiffs are alleging there was no effective communication because no auxiliary aid was provided.

27.    The Plaintiff Club Member Theodore Pinnock desires to move back to California.  Mr. Pinnock was disbarred on September 21, 2012.  On September 21,

22

Case#:
COMPLAINT

2017, Mr. Pinnock became eligible to be reinstated.  Mr. Pinnock uses a wheelchair due to the fact he has cerebral palsy.  Mr. Pinnock has a very severe speech impediment.  Mr. Pinnock uses texting to communicate with people he does not know.  Mr. Pinnock is a registered California voter.  Mr. Pinnock went online to find different apartments for his family to move to.  Mr. Pinnock went on each of the websites control by Defendants.  Mr. Pinnock went on the contact us page and found the telephone numbers for each of the places described within the Exhibit B to this complaint.  None of the contact pages have a texting system for Mr. Pinnock to use to communicate directly with the apartments.  Mr. Pinnock does not trust the national or California Relay System because the system relies upon the third party to communicate for him.  Mr. Pinnock prefers to communicate with people directly and not with third party that Mr. Pinnock does not know.  Also, Mr. Pinnock requested that Club members visit the properties for him to determine if the properties contain any architectural barriers.

28.    The Department Of Justice has "repeatedly affirmed that Title III [of the ADA] applies to websites that meet the definition of a public accommodation." *See* Gorecki v. Hobby Lobby Stores, Inc., CV 17–1131–JFW (SKx), 2017 WL 2957736, at *4 (C.D. Cal. June 15, 2017). In 2010, the DOJ published an Advanced Notice of Proposed Rulemaking ("ANPR"), where the DOJ acknowledged that the Internet did not exist when Congress enacted the ADA, and that neither the text of the ADA nor the promulgating regulations specifically address private websites. *Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations*, 75 FR 43460–01 (July 26, 2010). "Nevertheless, in its view, the statute's broad and expansive nondiscrimination mandate reaches goods and services provided by

Case#:
COMPLAINT

covered entities on websites over the internet. <u>Hobby Lobby Stores, Inc.</u>, 2017 WL 2957736, at *5 (citation omitted).  The requirement that a place of public accommodation refer to a physical place, however, does not preclude a plaintiff from challenging a business' online offerings. So long as there is a "nexus"—that is, "some connection between the good or service complained of and an actual physical place"—a plaintiff may challenge the digital offerings of an otherwise physical business. *Id.* at 1114. In other words, the ADA "applies to the services of a place of public accommodation, not services ***in*** a place of public accommodation. To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute." <u>Nat'l Fed'n of the Blind v. Target Corp.</u>, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) (emphasis added) (citing, *inter alia*, <u>Weyer</u>, 198 F.3d at 1115 (holding that "whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services")).  Defendants have a physical location and they offer rental services on the Internet.

29.     Defendants must modify their Internet offerings by offering the TTY/TDD number on the Internet.  42 United States Code 12182(b) states, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;..."

30.     In this case, the Plaintiffs are alleging that the Defendants failed to provide the TTY number or the text messaging system for people that are deaf or people

24

with speech conditions. Moreover, the Plaintiffs are alleging that the Defendants did not modify the websites to eliminate non-readable text to allow the blind and people with low vision to use the screen reader software to access the information on the website yet failed to use large print on their websites. See Exhibit B. The most popular screen reader programs are called Jobs Access With Speech or "JAWS" and Apple's VoiceOver Software. Mary Wambach and Theodore Pinnock are members of the United African Asian Abilities Club and they both have a speech condition. James Lee and Jack Pinnock are both members of the United African Asian Abilities Club and they both have low vision. These members cannot use the websites controlled by the Defendants. The modifications to the websites will not fundamentally alter the rental services provided by the Defendants and will not cause an undue burden to the Defendants because the modifications cost less than $1,000. Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiffs are informed, believe, and thereon allege that Defendants violated said provision.  Mary Wambach, Theodore Pinnock and Plaintiff Club decided it would be a futile gesture to make an auxiliary aid request because Defendants completely failed to comply with the ADA based upon his going to Defendants' place to verify access to rental services and goods; notwithstanding that Defendants failed to remove architectural barriers.  Plaintiffs allege that when Defendants do not remove architectural barriers, Defendants still have the duty to offer auxiliary aids to provide access to the goods and services.  Defendants failed to offer Plaintiffs any auxiliary aids to aid in obtaining leasing information and applications.

31.    The Ninth Circuit has affirmed the granting of a preliminary injunction in an ADA Title III auxiliary aid context. In Enyart, the Ninth applied the "best ensure" standard as to 36.309. Here, this Court should apply the same standard as to 36.303

Case#:
COMPLAINT

because residential landlords must ensure access to housing rental information. Enyart v. National Conference of Bar Examiners, Inc., 630 F.3d 1153 (2011). Under the ADA, a disabled individual is discriminated against when that person is denied the opportunity to participate in programs or services of a place of public accommodation, or is provided separate, but unequal, goods or services. *See* 42 U.S.C. § 12182(b)(1)(A)(i–iii). To ensure that places of accommodation provide the disabled with the full and equal enjoyment of the goods and services they offer, the ADA requires places of public accommodation to make "auxiliary aids and services" available "to prevent exclusion, denial of services, segregation or different treatment." *See* 42 U.S.C. § 12182(b)(1)(A)(ii–iii). Further, the DOJ, the agency that enforces the ADA, has promulgated regulations that require public accommodations to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication" with disabled individuals. 28 C.F.R. § 36.303(c)(1).  28 C.F.R. § 36.303(b)(2)Although "the regulations emphasize that ... no specific auxiliary aid or service is required in any given situation, whatever auxiliary aid or service the public accommodation chooses to provide must be effective." CVS Pharmacy, Inc., 2017 WL 4457508, at *4. Guillermo ROBLES, v. YUM! BRANDS, INC. d/b/a Pizza Hut, 2018 WL 566781.

32.     Here, for Defendants to effectively communicate with people with speech impairments they need a TTY/TDD. This device cost less than $700. Thus, it would not be an undue burden to provide. Defendants failed to provide the device. Auxiliary aids and services include "screen reader software, magnification software, optical readers ... or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 36.303(b)(2). Plaintiff Club has members with sight impairments.  Defendants maintain a website

Case#:
COMPLAINT

located at http://mpmcorp.vflyer.com/home/Listing.jsp?acctId=1724562.  The home page for the website contains very small print without any way of making the print large.  Also, the home page does not contain the TTY information.  Moreover, the home page does not contain the Fair Housing Act logo.  Furthermore, all pages for the website contain very small print without any way of making the print large.  Also, all pages do not contain the TTY information.  The website is making an offering for rental units.

CLAIM II AGAINST ALL DEFENDANTS: **Failure To Modify Practices, Policies And Procedures**

33.     Plaintiff bears the burden of proving that it requested a modification and that the modification sought is reasonable. To satisfy this burden, the plaintiff must introduce evidence that the modification sought is "reasonable in the general sense, that is, reasonable in the run of cases." Id.; see also U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 402, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002) To meet this burden,  he must present "sufficient evidence so that a defendant can evaluate the proposed solution to a barrier, the difficulty of accomplishing it, the cost [of] implementation, and the economic operation of the facility." Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Defendants failed and refused to provide a reasonable alternative by modifying its practices, policies and procedures in that they failed to have a scheme, plan, or design to assist Plaintiff and/or others similarly situated in entering and utilizing Defendants' services, as required by 42 U.S.C. § 12188(a). Defendants have an office on the property wherein rental services are provided to the public.  Moreover, Defendants provide rental services to the public at the office, at the on-site manager's office, at the off-site leasing office or on the web.  The Plaintiffs allege that the Defendants have multiple methods of

Case#:
COMPLAINT

providing access to the rental services.  One method is to remove architectural barriers that are readily achievable.  Plaintiffs allege that even if all of the architectural barriers are not readily achievable, Defendants are required to make the rental services accessible.  In this complaint, the Plaintiffs are not demanding that the Defendants remove all of the architectural barriers.  The architectural barriers listed within this complaint are for the purposes of showing that it is difficult for the Plaintiffs to access the rental services.  The Plaintiffs allege that the Defendants can use modifications to policies, practice and procedures to provide full and equal access with or without removing the alleged architectural barriers.  Also, the Plaintiffs allege that it is futile, for all the reasons stated herein for the Plaintiffs to attempt to visit the rental office after the Plaintiff Club has determined that the architectural barriers would prevent Plaintiffs from visiting the properties.

      a.     THE FAILURE TO TRAIN.  This claim alleges that Defendants failed to train their staff on the way to use the auxiliary aids.

      b.     THE FAILURE TO HAVE A PRACTICE TO REMOVE ARCHITECTURAL AND COMMUNICATION BARRIERS.  The Plaintiffs allege that Defendants failed to have a practice to remove architectural barrier and communication barriers. This case is not requiring the Defendants to remove the architectural barrier and communication barriers but is requiring the Defendants to have a practice to remove the architectural and communication barriers.

      c.     THE FAILURE TO HAVE A PROCEDURES TO PROVIDE EFFECTIVE COMMUNICATION.  Plaintiffs are alleging the Defendants failed to have a procedure to provide effective communication. Plaintiffs are alleging that Defendants did not provide any auxiliary aid and the Defendants did not provide any obvious reasonable accommodation. The Plaintiffs are not

Case#:
COMPLAINT

demanding any specific reasonable accommodation or any specific auxiliary aid. The law allows the Defendants to decide what auxiliary aid and reasonable accommodation will be provided. In this case, the Defendants did not provide any obvious reasonable accommodation, did not provide any auxiliary aid and did not provide any effective communication. The Plaintiffs are alleging that the websites provide a contact number for the public without texting for people with a deaf condition or a speech condition. This conduct discriminates against the deaf and the people with speech impairments.

> d.     THE FAILURE TO MODIFY THE WEBSITES.  On the websites the Defendants must provide a way to effectively communicate with the people that are deaf or the people with speech impairments.

34.     Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Defendants failed to remove barriers as required by 42 U.S.C. § 12182(a).  ADA Title III covers places of public accommodation within residential facilities. See Section III–1.2000, ADA Title III Technical Assistance Manual, http://www.ada.gov/taman3.html. Thus, areas within multifamily residential facilities that qualify as places of public accommodation are covered by the ADA if use of the areas is not limited exclusively to owners, residents, and their guests. ILLUSTRATION 1: A private residential apartment complex includes a swimming pool for use by apartment tenants and their guests. The complex also sells pool "memberships" generally to the public. The pool qualifies as a place of public accommodation.  ILLUSTRATION 2: A residential condominium association maintains a longstanding policy of restricting use of its party room to owners, residents, and their guests. Consistent with that policy, it refuses to rent the room to local businesses and community organizations as a meeting place for educational seminars. The party room is not a place of public accommodation.

29

Case#:
COMPLAINT

ILLUSTRATION 3: A private residential apartment complex contains a rental office. The rental office is a place of public accommodation. See Section III–1.2000, ADA Title III Technical Assistance Manual, http://www.ada.gov/taman3.html ("ILLUSTRATION 3: A private residential apartment complex contains a rental office. The rental office is a place of public accommodation");30 Johnson v. Laura Dawn Apartments, LLC, 2012 WL 33040 at *1 n. 1 (E.D.Cal.2012) (Hollows, M.J.) ("[t]he leasing office of an apartment complex is a place of public accommodation, despite the fact that the apartments themselves are not subject to the ADA"). *Kalani v. Castle Village LLC*, 14 F.Supp.3d 1359 (2014).   The fact a facility such as an apartment complex itself may not fall within the ADA's statutory definition of "public accommodation" does not mean the site may not contain one or more of the enumerated public accommodations within its confines. For example, a restaurant or a retail store located on a cruise ship is still a public accommodation subject to the provisions of the ADA, even if the ship itself is not. Similarly, although a model home used only as an example of what is being offered for sale is a residential property and not a "public accommodation" subject to the ADA, if a room in the model home functions as a sales office, the ADA applies to it. See *Kalani.* Defendants have an office on the property wherein rental services are provided to the public.  Plaintiffs assert that the office is a public accommodation.  Additionally, Plaintiffs alleged that the common areas are also open to the public and that Defendants invite the public to view their rental property as part of the apartment rental process. In this case, Plaintiffs contend that all of the access problems listed above are violations that affect the public. Plaintiffs allegation is also supported because Plaintiffs were allowed to enter the apartments' common area without a gate key. Plaintiffs assert that the ADA Title III applies to any area that is open to the public. Thus, Plaintiffs were subjected to discrimination in violation of 42

30

United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because they were denied equal access to Defendants' existing facilities, including the office and common areas.  Defendants have known or should have known that Defendants had a duty to repair and maintain their property including accessible features since 1990. Defendants have failed to do so in the past up to and including the present. Plaintiffs is also seeking an order requiring the Defendants to have a continuing duty of refurbishing the access features once each year. In the present matter, Defendants failed to have a plan to maintain any potential accessible features in a usable condition.  Thus, Plaintiffs were subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because Plaintiffs were denied equal access to Defendants' existing facilities. Based on the facts plead at ¶¶ 4 - 25 above, and the facts elsewhere herein this complaint, Plaintiff will suffer irreparable harm unless Defendants are ordered to remove architectural, non-architectural, and communication barriers at Defendants' public accommodation. Plaintiffs are also seeking an order requiring the Defendants to undertake the required duty of maintaining and refurbishing the access features on a regular basis, i.e. once a year. In the present matter, Defendants failed to have a plan to maintain any potential accessible features in a usable condition.  Specifically, Defendants failed to have a policy to install and maintain accessible disabled parking dimensional striping, access aisles, signage, exterior ground markings, and exterior paths of travel, and an accessible office entrance.   Plaintiffs allege that Defendants' discriminatory conduct is capable of repetitio1n, and this discriminatory repetition adversely impacts Plaintiffs and a substantial segment of the disability community. Plaintiffs allege there is a national public interest in requiring accessibility in places of public accommodation.  Plaintiffs have no adequate remedy at law to redress the discriminatory conduct of Defendants.  Plaintiffs desire to access to Defendants'

Case#:
COMPLAINT

place of business in the immediate future.  Accordingly, the Plaintiffs allege that a structural or mandatory injunction is necessary to enjoin compliance with federal civil rights laws enacted for the benefit of these Plaintiff and other individuals with similar disabilities.

CLAIM III: **Communication Barriers**

35.    The common area of Defendants property does not provide the physical structures for people that are deaf and the people that are blind or low vision. Therefore, the property contends communication barriers. 42 United States Code 12182(b) states, "a failure to remove…, and communication barriers that are structural in nature, in existing facilities, and where such removal is readily achievable." Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiffs are informed, believe, and thereon allege that Defendants violated said provision. At Defendants' business there are communication barriers outside and inside the Defendants' business of providing rental services. As stated above, there are Plaintiff Members having sight impaired.  Therefore, Plaintiffs need structural communication to access Defendants property.

### DISCRIMINATORY PRACTICES IN HOUSING ACCOMMODATIONS

SECOND CAUSE OF ACTION

36.    Based on the facts plead at ¶¶ 4 - 25 above and elsewhere herein this complaint, Plaintiffs suffered discrimination in violation of FHA sections 42 § 3604(c), and § 3604(f)(1- 3) as further detailed below. The Federal Fair Housing Act applies to Defendants apartment complex since it has more than 4 residential units.

CLAIM I:  Discrimination In Violation of 42 § 3604(f)(2)

Case#:
COMPLAINT

37.     Based on the facts plead at ¶¶ 4 - 25 above and elsewhere herein this complaint, Plaintiffs suffered discrimination in violation of this FHA section.  The relevant FHA statute states it is unlawful to discriminate against <u>any person</u> in the terms, conditions, <u>or privileges of sale or rental of a dwelling,</u> <u>or in the provision of services or facilities in connection with such dwelling,</u> because of a handicap of that person… § 3604(f)(2) [emphasis added].   Plaintiffs are not required to have an interest in renting a particular property or dwelling to have standing.  *Smith v. Pacific Properties and Development Corp* at 1099 [ *Smith* court held <u>a disabled person does not have to have an interest in actually purchasing or renting a particular property or dwelling in order to allege a discriminatory violation to enforce the rights created by § 3604(f)(2)</u>].   Plaintiffs suffered the injury of discriminatory conduct by Defendant and Plaintiffs suffered damages as a result. Plaintiffs seek injunctive relief as well as damages, both of which are available under 42 USC § 3613(c).  Even if its later determined that prospective injunctive relief is not available to Plaintiffs, Plaintiffs are still permitted to recover damages. *Harris v Itzakhi*, 183 F.3d 1043, 1050 (9th Cir 1999) [During the appeal in *Harris* case,  the plaintiff therein moved Three Thousand (3000) miles away and her injunctive claims became moot.  However, Plaintiff's claim for the retrospective relief of damages were unaffected].  While Plaintiffs can satisfy the injunctive relief prudential standing requirements, the above Ninth Circuit court authority makes it clear that those <u>prudential standing requirements for injunctive relief are not applicable to Plaintiffs FHA damage claims</u>.  Hence, Plaintiffs damage claims survive even if prospective injunctive relief is not available.

CLAIM II:  Discrimination In Violation of 42 § 3604(f)(1)

38.     Based on the facts plead at ¶¶ 4 – 25, and elsewhere herein this complaint, Plaintiffs suffered discrimination in violation of this FHA section.  Defendant

33

caused Plaintiffs to suffer disparate impact discrimination.  The relevant FHA statute states it is unlawful to discriminate in the sale or rental, or <u>to otherwise make unavailable or deny</u>, a dwelling to any buyer or renter because of a handicap of (A) that buyer or renter; (B) <u>a person</u> residing in or <u>intending to reside</u> in that dwelling after it is so sold, rented, or made available; or… §3604(f)(1) [emphasis added]. The very recent U.S. Supreme Court decision upheld the unanimous rule, of all nine Circuit Courts of Appeal that had previously addressed it, that the FHA statutory scheme permits disparate impact claims, and that those type of claims also do not require a showing of intent. *Texas Dept. of Housing and Community Affairs v Inclusive Communities Project*, 135 S.Ct. 2507, 2519 (2015) [ the statutory phrase "<u>to otherwise make unavailable or deny</u>" – the very same statutory language as also used in §3604(f)(1)].  Our Ninth Circuit Court of Appeals previously had reached that same conclusion.  *Halet v. Wend Investment Co.,* 672 F.2d 1305, 1311 (9th Cir 1982).    Based on the facts plead at ¶¶ 4 – 25, and elsewhere herein this complaint, Plaintiffs suffered discrimination in violation of FHA §3604(f)(1).  Wherefore, Plaintiffs were injured, and prays for damages and other relief as hereinafter stated.

CLAIM III:  Discrimination In Violation of 42 § 3604(c) As To NSA

39.    Based on information, belief, and the facts plead at ¶¶ 4 – 25 above and elsewhere herein, Plaintiffs herein alleges that Defendants caused Club to suffer the injury of discrimination since Defendants violated 42 U.S.C. §§ 3604 (c) with respect to its notices, statements, and advertisements ("NSA").  Plaintiffs allege that Defendants made, printed, or published, or caused to be made printed, or published notices, statements, or advertisements ("NSA") that suggest to an ordinary reader a preference to attract tenants without disabilities.  Defendants' Internet picture advertising has an unlawful disparate impact on Plaintiffs and Plaintiff Club's other

Case#:
COMPLAINT

members. Apartment complexes other than the Defendants, properly advertise disability and accessible features on the Internet. For example, on http://www.rent.com/california/valley-village-apartments/the-avery-4-64371353, the apartment called Avery Apartments shows a photograph of the pool with the assistive lift device. The following is the picture from the Avery Apartments:



In a Second Circuit Court decision, the Second Circuit held that "in some circumstances" an ad using human models of one race to the exclusion of others may indicate a racial preference violative of § 3604(c), regardless of the absence of any facially discriminatory verbal message. *Id.* [reasoning that neither the broadly drafted statute nor its legislative history "suggests that Congress intended to exempt from its proscriptions subtle methods of indicating racial preference"] *see also HOME,* 943 F.2d at 647–48 & n. 4 ("discrimination [under the FHA] may occur through words or pictures, and the use of all-white models could be factor in determining whether an advertisement conveys a discriminatory message...."); *Spann v. Colonial Village, Inc.,* 899 F.2d 24, 34–35 (D.C.Cir.), *cert. denied,* 498 U.S. 980, 111 S.Ct. 508, 112 L.Ed.2d 521 (1990); *Fenwick–Schafer,* 774 F.Supp. at 364–66; *Saunders,* 659 F.Supp. at 1058. This same reasoning applies to the present matter.   In the present case, Defendant advertises the subject property on webs sites it controls.  Defendants' Internet pictures suggest a preference for people without disabilities.  Plaintiffs allege that there is disparate treatment on the internet related to the amenities being offered to people without disabilities and people with disabilities.   Plaintiffs allege that the internet NSA is a primary method

35

Case#:
COMPLAINT

that potential renters learn information about the amenities offered at apartments and their policies practices and procedures.  Plaintiff Club caused certain such notices of the Defendants to be downloaded and reviewed them. Plaintiffs allege that Defendants existing advertisements on websites is directed toward persons who do not have disabilities. In the present case, none of Defendants' Internet advertising adhered to the guidelines within 24 CFR §109 [informative section and is still used by HUD as internal guidelines for its NSA complaints, but this CFR section is otherwise no longer operative] or had the following:

> Equal Housing Opportunity Statement: We are pledged to the letter and spirit of U.S. policy for the achievement of equal housing opportunity throughout the Nation. We encourage and support an affirmative advertising and marketing program in which there are no barriers to obtaining housing because of race, color, religion, sex, handicap, familial status, or national origin.  Equal Housing Opportunity Slogan: "Equal Housing Opportunity." Table III  Illustration of Media Notice--Publisher's notice: All real estate advertised herein is subject to the Federal Fair Housing Act, which makes it illegal to advertise "any preference, limitation, or discrimination because of race, color, religion, sex, handicap, familial status, or national origin, or intention to make any such preference, limitation, or discrimination."
>
> We will not knowingly accept any advertising for real estate which is in violation of the law.
>
> All persons are hereby informed that all dwellings advertised are available on an equal opportunity basis.

40.   Also, in the present case, Defendants had the opportunity, based upon either the large number of models used in an advertisement or the numerous advertisements placed by an advertiser with a particular publisher, to include models

Case#:
COMPLAINT

of persons with handicaps, a protected group under the FHA. Plaintiffs allege that Defendant engages in disparate treatment with respect to Defendants' internet Notices, Statements, and Advertisements as to the amenities being offered to people without disabilities and people with disabilities.   Plaintiffs can establish liability based on the "ordinary reader" standard. Defendants' Internet advertising uses selective media or content exclusively to cater to the majority population without disabilities. Further, Defendants advertising uses catch words, symbols or logotypes and colloquialisms that suggest a preference for people without disabilities. Further, none of the human models used in the said advertising have a known disability. In addition, the said advertising fails to conform to the advertising requirements delineated in Appendix I, Tables I-III of 24 CFR §109.  Plaintiffs allege that Defendants notices, statements, and internet advertisements suggests to an ordinary reader that Defendants have a preference to attract tenants without handicap or disabilities and the persons associated with them.  Plaintiffs allege Defendant engages in discriminatory treatment as against Plaintiffs and other similarly situated Club Members with respect to Defendants internet Notices, Statements, and Advertisements, as to the amenities being offered to people without disabilities and people with disabilities.   Defendants notices, statements, and advertisements ("NSA") deterred Plaintiffs and other members of the Club from going to and attempting access to Defendants' rental services.    Defendants' NSA fail to provide any information as to any alternative methods of access to the inaccessible features. Plaintiffs allege that the present Defendant landlord uses its NSA to inform non-disabled potential tenants about the apartments, so they do not need to physically visit the place to make housing choices. However, prospective tenants with disabilities are forced to call or physically visit a place to assess the physical access amenities, policies, procedures that affect their disabilities.  Due to Defendants'

37

discriminatory notices, statements, and advertisements, Plaintiffs suffered disparate discriminatory treatment due to Defendants' failure to comply with the FHA in that Plaintiffs, Plaintiff Club, and other similarly situated Club Members need to physically visit the property to ascertain its physical accessibility, and its leasing policies and procedures that affect Plaintiffs and Plaintiff Club's other similarly situated Members who are persons with similar disabilities.  As a result, Plaintiffs suffered the denial of equal access prohibited under Plaintiff's FHA and ADA claims as stated above.   Additionally, Plaintiffs allege Defendant engages in disparate treatment with respect to Defendants internet Notices, Statements, and Advertisements as to the amenities being offered to people without disabilities and people with disabilities and Plaintiffs suffered discriminatory treatment, including but not limited to the following examples. Under the FHA and ADA, a companion service dog is not a pet and a service dog policy is required but is not provided. Plaintiffs potentially will also need to personally undertake the expense to modify any rental unit to accommodate his disabilities including, but not limited to, such issues as providing accessible parking in close proximity to a potential rental unit, grab bars in the restroom, installation of accessible sink and shower faucets, potentially replacing door operating hardware with accessible hardware, potential ramp at the rental unit entrance door, etc.  Additionally, Defendants' apartment common areas may need to be reasonably modified by Plaintiffs, i.e. such as any common area grill spaces, etc.  Defendants' NSA do not provide any information as to their required reasonable modification or accommodation policies.

41.    Also, Defendants' internet website NSA are not accessible visually since one is not able to click and increase the NSA font size to make it more readable for persons with impaired vision.  Additionally, Defendants' internet NSAs fail to be offered in alternative methods.  The offices and common areas offer services. Even

Case#:
COMPLAINT

if the facilities were constructed before March 13, 1991 and the physical barriers are not readily achievable to remove, the services offered in the facilities must be accessible.

42.      Plaintiffs allege Defendants' internet and other Notices, Statements, and Advertisements do not state the accessible amenities at all and an ordinary person would conclude it is only directed towards persons without disabilities.  Plaintiff alleges that Defendants' use of the "equal housing opportunity statement" is also misleading. Defendants' apartment property is not accessible. Prospective tenants with disabilities including Plaintiff Club are forced to physically visit a place to assess the access amenities while persons without disabilities do not.  All the above facts stated herein have and did have a discriminatory impact on Plaintiff Club and on the disability community in violation of 42 U.S.C. § 3604(c), § 3604(f)(1-2). Plaintiff Club and Plaintiff Members personally experienced the discriminatory conduct as stated above in violation of the FHA.

43.      Wherefore, Plaintiffs were injured, and prays for damages and other relief as hereinafter stated.

THIRD CAUSE OF ACTION : **Violation of California Fair Housing Act**

44.      Failure to Provide Obvious Reasonable Accommodation and Modification: Based on information, belief and the facts stated above at ¶¶ 4 – 25 above and elsewhere in this complaint, Plaintiffs allege that Defendants refused to make the obvious reasonable accommodations in rules, policies, practices, or services in violation of CA Government Code sections 12927 and 12955.2, when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling such as TTY, phone texting or large print.

45.      Wherefore, Plaintiffs were injured by Defendants' conduct, and Plaintiffs

Case#:
COMPLAINT

pray for injunctive relief, damages, and other relief as hereinafter stated.

FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS- **Claims Under The Americans With Disabilities Act Of 1990**

46.    Plaintiff is not required to provide notice to the defendants prior to filing a complaint alleging discrimination pursuant to Federal ADA claims.   Skaff v Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832 (9th Cir. 2007), see also, Botosan v. Paul McNally Realty, 216 F.3d 827, 832 (9th Cir 2000).


CLAIM I: **Denial of Participation**

47.    On the Defendants websites they allow the public without deafness and without speech impairments to participate by providing them with a number to call. However, people that are deaf and people with speech impairments are denied to participate because the Defendants do not have any effective communications. 42 United States Code 12182(b) states, "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiffs are informed, believe, and thereon allege that Defendants violated the said provision because Plaintiffs could not participate in their advertising accommodations because said advertising failed to delineate what features of the property are physically accessible and what services are accessible.  Services include alternative methods of access other than removing physical barriers.

CLAIM II: **Participation in Unequal Benefit**

Case#:
COMPLAINT

48.    Defendants provide websites for people without disabilities to benefit from the rental services without going to the apartments to learn about the properties. However, for people with disabilities that require the access to the facility, the Defendants do not provide any information on the websites regarding if the rental office is accessible. Moreover, the Defendants provide the telephone number for the public to call to inquire about the rental services without providing any effective communications for people that are deaf and for people with speech impairments. Therefore, Defendants provide the unequal benefit for people with disabilities.   42 United States Code 12182(b) states: It shall be discriminatory to deny an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation. Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiff is informed, believes, and thereon alleges that Defendants violated said provision because the present Defendants do not offer users with disabilities any benefits that will help them decide to go to the place of accommodation. For example, providing physical access and service access is a very important benefit for people with disabilities. Even if the facilities are not completely physically accessible, the person with a disability may decide to go to the place if they provide greater service access. There is no way for a person with a disability to determine if Defendants' place offers service access without the disabled person going to their business to find out that they cannot physically access the facility and that there is also no service access.

CLAIM III: **Separate Benefit**

49.    For people without disabilities, the Defendants provide all of the information

Case#:
COMPLAINT

of the websites. For people with disabilities, Defendants require them to go to the property to determine if it is accessible and require them to request the effective communication and to request the obvious reasonable accommodation. Therefore, Defendants require people with disabilities to have a separate benefit. Plaintiffs are alleging photograph discrimination related to the physical access of each of the apartments within Exhibit B to this complaint. The purpose of the photographs are to entice perspective renters to apply online or to contact the Defendants to rent a place. The photographs only entice people without mobility disabilities. The photographs exclude any photographs of any accessible features. For example, there is no photograph of accessible parking. There are no photographs of the accessible route to the rental office. There are photographs of the accessible route to the manager's office. There are no photographs related to the access to get into and use the rental or manager's office. There are no photographs related to the accessible route of the common area. There are no photographs of the accessible units. In fact, all the photographs lead a person with a mobility disability to believe that the apartments are not accessible, or they must have someone go to the properties to make sure it is accessible. However, people without disabilities are not required to go to the property to see if it is accessible because the photographs show the accessible features for people without disabilities. However, for people with mobility disabilities, the photographs discriminate against them.  42 United States Code 12182(b) states "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide

Case#:
COMPLAINT

the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others." Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiffs are informed, believe, and thereon allege that Defendants violated the said provision since Defendants provide a benefit that is separate and unequal to people with disability by forcing them to go to their place of accommodation to determine if they are physically accessible and to determine if they are service accessible. Persons <u>without</u> disabilities do not need to consider if they can access the place of accommodation when they look at Defendants' advertising.  All they need to consider is if they want to go to the place by looking at the advertising, but persons <u>with</u> disabilities must consider if the place is accessible by looking at the advertising or they need to go there to discover that the place is not accessible. Plaintiffs could not determine from Defendants' advertising if Defendants' facility was accessible.

CLAIM IV: **<u>Integrated Settings</u>**

50.     The Defendants websites and the rental services are not integrated for people with disabilities because people without disabilities can access the websites and the rental services without any problem but people with disabilities are required to request for separate rental services. People with mobility conditions are not integrated when using the websites because they must go to the apartments to determine if they are accessible but people without disabilities can access the websites without to determine if they can use them. People that are blind and with low vision must request help to read the website information because the printed information is too small but people without disabilities can access the websites without asking for help. People with deafness or people with speech condition must

Case#:
COMPLAINT

ask for help calling the number on the websites because there is no TTY number or there is no texting system when people without disabilities do not need to ask for help. Therefore, the rental service is not integrated for people with disabilities. 42 United States Code 12182(b) states, "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual." Plaintiff alleges by failing to offer the alternative methods to physical access, the defendants failed to offer the goods or the services in the most integrated selling. For example, defendants knew that the place of accommodation was not physically accessible but it failed to provide notice in their advertising, notices in the parking lot or otherwise on their premises, to allow people with disabilities to decide if they wanted to use the place by accepting the alternative methods.

CLAIM V: **Administrative Methods**

51.     The Defendants contract web providers without making sure that the websites will be accessible to people with disabilities. The Defendants contract with third parties to maintain the rental office without making sure that the third party remove architectural communication barriers. Therefore, the administrative methods used by Defendants discriminate against people with disabilities.  42 United States Code 12182(b) states, "An individual or entity shall not, directly or through contractual or other arrangements, utilize standards or criteria or methods of administration—(i) that have the effect of discriminating on the basis of disability; or (ii) that perpetuate the discrimination of others who are subject to common administrative control." Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiffs are informed, believe, and thereon allege that Defendants violated said provision since Defendants decided to open a business and invite the public for

Case#:
COMPLAINT

profit. Thus, Defendants agreed to comply with all federal and states laws related to their business. Defendants retained agents and/or employees for business administration including Civil Rights compliance. Thus, Defendants had administrative control over service access compliance. Plaintiff alleges based on information and belief that Defendants' services including alternative methods, auxiliary aids, and business services violate said section because Defendants failed to exercise control over their agents or employees as to ADA compliance.

CLAIM VI: **Screen Out**

52.     People with disabilities are screen out from the rental process because Defendants did not remove the architectural barriers, communication barriers, do not provide the effective communication and did not provide the auxiliary aids. 42 United States Code 12182(b) states, "...the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;..." Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiffs are informed, believe, and thereon allege that Defendants violated said provision.  Plaintiff alleges that the ADA was passed in 1990. It is alleged that one form of eliminating ADA discrimination is by removing architectural barriers if readily achievable. This claim relates to services even if some barriers cannot be removed or do not relate to physical barriers. Based on information and belief, Plaintiffs allege that Defendants failed to maintain policies to ensure their goods and services are fully accessible. Defendants' failure screens out people with disabilities.

Case#:
COMPLAINT

CLAIM IX AGAINST ALL DEFENDANTS: **Denial Of Full And Equal Access**

53.     Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiffs were denied full and equal access to Defendants' rental services, goods, facilities, privileges, advantages, or accommodations.  Plaintiff alleges Defendants are a public accommodation owned, leased and/or operated by Defendants. Defendants' existing facilities and/or services failed to provide full and equal access to Defendants' facility as required by 42 U.S.C. § 12182(a).  Thus, both Plaintiffs were subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because Plaintiffs were denied equal access to Defendants' existing facilities.  In this case, Defendants' apartment facilities, including the office and common areas, failed to comply with ADAAG and Title 24 requirements. Defendants' property has physical access violations that are described above that were experienced by Plaintiff Members and Plaintiff Club. Additionally, Plaintiff Club Access Report also set forth these physical and other barriers to access that deny equal access to Plaintiff Members and other members of Plaintiff Club.  As to non-physical barriers that exist, Defendants' facility does not have any of the required hearing-impaired smoke/fire alarms located at the facility. Defendants' facility does not have a TTY machine available on-site.  Defendants failed to comply with Title 24 and ADAAG standards.

54.     At least one additional Club member ("Member Tester") has physical impairments and due to these impairments, he has learned to successfully operate a wheelchair for mobility.  Said physical impairments substantially limit one or more of the following major life activities including but not limited to: walking.  Member is unable to walk any distance.  Member also has weakness in upper limb range of motion and has reduced dexterity of his hands.  Member has physical impairments because the conditions affect one or more of the following body systems:

46

neurological, musculoskeletal, special sense organs, and/or cardiovascular.  Further, members said physical impairments substantially limit one or more of the following major life activities:  walking, and limited range of motion in arms and hands.  In addition, member cannot perform one or more of the said major life activities in the manner, speed, and duration when compared to the average person.  Moreover, at least one of the members of the Plaintiff Club has a history of or has been classified as having a physical impairment as required by 42 U.S.C. § 12102(2)(A).

CLAIM X - **Failure To Investigate And Maintain Accessible Features**

55.    It is alleged that Defendants knowing failed to investigate ADA access compliance at the planning stage of opening the business or at the annual renewal of the business. At trial, Plaintiff shall prove Defendants entered a management contract without considering ADA access at all, because they consciously decided they were exempted or they were in ADA physical access compliance because a local government approved the building plans for the property. It is alleged that Defendants reasoned that providing physical access means providing full and equal access, and this is the explanation for their failure to investigate providing reasonable modifications, alternative methods or auxiliary aids and their failure to investigate removing communication barriers. However, as alleged herein ADA covers more than physical access. It is alleged that Defendants opened their business in compliance with all laws. In the course of time, Defendants made repairs and administrative changes which violated ADA and its regulations. ADA Title III Regulations state, "Sec.36.211 Maintenance of accessible features.  (a) A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by

47

persons with disabilities by the Act or this part. (b) This section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs." For the purposes of this part of this claim Plaintiffs allege Defendants mental state satisfied the second prong of intent - knowledge to a substantial certainty. Also, it is alleged Defendants exercised administrative control over third parties including architects, engineers, construction contractors, lawyers, management and employees as to the accessible features of the public accommodation. Accessible features include compliance with new construction and alteration access standards, readily achievable architectural and communication standards, and providing alternative methods, reasonable modifications.   The basis of this claim is that Defendants did and does not have a process to maintain prior and future accessible features. Further, it is alleged that even if Defendants currently install accessible features they will not maintain them in the future. Thus, it is alleged that Defendants intentionally failed to maintain accessible features they installed when the property was first constructed or when the public accommodation was first open or when the property was remodeled.  WHEREFORE, Plaintiff prays for judgment and relief as hereinafter set forth.

## **DISCRIMINATORY PRACTICES IN PUBLIC ACCOMMODATIONS**
### FIFTH CAUSE OF ACTION: AGAINST ALL DEFENDANTS - **CLAIMS UNDER CALIFORNIA ACCESSIBILITY LAWS**

CLAIM I: **Denial Of Full And Equal Access**

56.   Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiff was denied full and equal access to Defendants' goods. services, facilities, privileges, advantages, or accommodations within a public accommodation owned, leased, and/or operated by Defendants as required by Civil Code Sections 54, 54.1,

Case#:
COMPLAINT

and specifically 54.1(d).  Defendants' facility violated state disability access laws, the ANSI Standards, A117, and California's Title 24 Accessible Building Code by failing to provide equal access to Defendants' facilities to persons with disabilities. In this case, Defendants' rental apartment failed to comply with ADAAG and Title 24 requirements.  Plaintiff Members' findings show that the following areas of physical access violations exist at the property: parking, entrance, accessible route, path of travel, doors, stairways and the signs. Additionally, Defendants' facility does not have any of the required hearing-impaired smoke/fire alarms located at the facility.  Defendants' facility does not have the required TTY machine available on-site.  All said violations failed to comply with ADAAG and Title 24 standards. Therefore, the Plaintiff Members alleges that Defendant violated Civil Code Section 54.3 at the time they constructed the facility before the ADA was enacted.

57.     Defendants denied Plaintiff Members full and equal access to Defendants' facility. Thus, Plaintiff Members was subjected to discrimination pursuant to Civil Code §§ 54, 54.1, and 54.3.

CLAIM II: **Failure To Modify Practices, Policies And Procedures**

58.     Based on the facts plead at ¶¶ 4 - 25 above and elsewhere herein this complaint, Defendants failed and refused to provide a reasonable alternative by modifying its practices, policies, and procedures in that they failed to have a scheme, plan, or design to assist Plaintiff Members and/or others similarly situated in entering and utilizing Defendants' services as required by Civil Code § 54.1. Additionally, Defendants failed to have a plan to maintain any potential accessible features in a usable condition.  Thus, Plaintiff Members was subjected to discrimination in violation of Civil Code § 54.1.


CLAIM III: **Violation Of The Unruh Act**

49

59.     Based on the facts plead at ¶¶ 4 - 25 above and elsewhere herein this complaint and because Defendants violated the CA Civil Code § 51 by specifically failing to comply with Civil Code §51(f).  Defendants' facility violated state disability laws, the ANSI Standards, A117, and California's Title 24 Accessible Building Code by failing to provide equal access to Defendants' facilities. Defendants did and continue to discriminate against Plaintiff Members in violation of Civil Code §§ 51(f), and 52.

60.     Based on the facts plead at ¶¶ 4 - 26 above, Claims I, II, and III of Plaintiff Members' Third Cause Of Action above, and the facts elsewhere herein this complaint, Plaintiff will suffer irreparable harm unless Defendants are ordered to remove architectural, non-architectural, and communication barriers at Defendants' public accommodation.  Plaintiffs allege that Defendants' discriminatory conduct is capable of repetition, and this discriminatory repetition adversely impacts Plaintiff and a substantial segment of the disability community.  Plaintiff alleges there is a state public interest in requiring accessibility in places of public accommodation. Plaintiff has no adequate remedy at law to redress the discriminatory conduct of Defendants.  Plaintiff desires to access to Defendants' places of business in the immediate future.  Accordingly, the Plaintiff alleges that a structural or mandatory injunction is necessary to enjoin compliance with state civil rights laws enacted for the benefit of individuals with disabilities.

61.     Wherefore, Plaintiff Members pray for damages and relief as hereinafter stated.


**Treble Damages Pursuant To Claims I, II, III Under The California Accessibility Laws**

62.     Defendants, each of them respectively, at times prior to and including the day

Case#:
COMPLAINT

Plaintiff Members patronized Defendants' facilities, and continuing to the present time, knew that persons with physical disabilities were denied their rights of equal access to all portions of this public accommodation facility.  Despite such knowledge, Defendants, and each of them, failed and refused to take steps to comply with the applicable access statutes; and despite knowledge of the resulting problems and denial of civil rights thereby suffered by Plaintiff Members.  Defendants, and each of them, have failed and refused to take action to grant full and equal access to Plaintiff Members in the respects complained of hereinabove.  Defendants, and each of them, have carried out a course of conduct of refusing to respond to, or correct complaints about, denial of disabled access and have refused to comply with their legal obligations to make Defendants' public accommodation facilities accessible pursuant to the ADAAG and Title 24 of the California Code of Regulations (also known as the California Building Code).  Such actions and continuing course of conduct by Defendants in conscious disregard of the rights and/or safety of Plaintiff justify an award of treble damages pursuant to sections 52(a) and 54.3(a) of the California Civil Code.  The California Supreme Court has stated:  "…the statute provides for damages aside from any actual damages incurred by the plaintiff. 'This sum is unquestionably a penalty which the law imposes, and which it directs shall be paid to the complaining party. ... [But], while the law has seen fit to declare that it shall be paid to the complaining party, it might as well have directed that it be paid into the common-school fund. The imposition is in its nature penal, having regard only to the fact that the law has been violated and its majesty outraged'." *Koire v Metro Car Wash (1985) 40 Cal.3d 24, 33-34* [citing its decision in *Orloff v. Los Angeles Turf Club (1947) 30 Cal.2d 110, 115*].

63.    Defendants, and each of their actions have also been oppressive to persons with physical disabilities including Plaintiff Members and have evidenced actual or

Case#:
COMPLAINT

implied malicious intent toward Plaintiff Members who has been denied the proper

access to which he is entitled by law.  Further, Defendants and each of their refusals

or omissions to correct these problems evidence disregard for the rights of Plaintiff

Members.

64.      Plaintiffs pray for an award of treble damages against Defendants, and each of

them, pursuant to California Civil Code sections 52(a) and 54.3(a).


**DEMAND FOR JUDGMENT FOR RELIEF:**

A.      All named Plaintiffs seeks injunctive relief pursuant to 42 U.S.C. 3613(c) and

42 U.S.C. § 12188(a).  Only the individual Plaintiff seeks injunctive relief pursuant

to CA Civil Code §52.  Pursuant to 42 U.S.C. 3613(c), all Plaintiffs request this

court to enjoin Defendants to cease their discriminatory practices in housing rentals,

and housing management services and for Defendants to implement written policies

and methods to respond to reasonable accommodation and reasonable modification

requests.  Pursuant to 42 U.S.C. § 12188(a), Plaintiffs request this Court enjoin

Defendants to remove all barriers to equal access to the disabled Plaintiffs in, at, or

on their facilities, including but not limited to architectural and communicative

barriers in the provision of Defendants' rental services.  Plaintiffs do not seek

injunctive relief pursuant to Cal. Civil Code §55 and Plaintiffs do not seek

attorneys' fees pursuant to Cal. Civil Code §55.  Plaintiffs do not seek any relief at

all pursuant to Cal. Civil Code §55.

B.      All named Plaintiffs seek actual damages pursuant to 42 U.S.C. 3613(c);

C.   Only the named individual Plaintiff Members seeks recovery of actual damages

pursuant to Cal. Civil Code §§ 52 or 54.3

D.      Only the named individual Plaintiff Members seeks $4,000 in minimum

statutory damages pursuant to Cal. Civil Code § 52 for each and every offense of

52

Case#:
COMPLAINT

Civil Code § 51, pursuant to <u>Munson v. Del Taco</u>, (June 2009) *46 Cal. 4th 661*;

E.      In the alternative to the damages pursuant to Cal. Civil Code § 52 in Paragraph C above, only the named individual Plaintiff Members seeks $1,000 in minimum statutory damages pursuant to Cal. Civil Code § 54.3 for each and every offense of Civil Code § 54.1;

F.      All named Plaintiffs seek attorneys' fees pursuant to 42 U.S.C. 3613(c)(2), 42 U.S.C. § 12205, and Cal. Civil Code §§ 52, 54.3;

G.      Only the named individual Plaintiff seeks treble damages pursuant to Cal. Civil Code §§ 52(a) or 54.3(a);

H.      The Plaintiffs are seeking perspective relief to require the Defendants to provide obvious reasonable accommodations, to provide the required auxiliary aids and to modify the procedures, the practices and the policies of the Defendants. Without perspective relief the Plaintiffs and people with disabilities will suffer future harm.

I.      All named Plaintiffs seek a Jury Trial and;

J.      For such other further relief as the court deems proper.


Respectfully submitted:

                                LAW OFFICES OF DAVID C. WAKEFIELD
Dated:  April 25, 2018

                                        By:   /s/David C. Wakefield
                                              DAVID C. WAKEFIELD, ESQ.
                                              Attorney for Plaintiffs


53

                                                                Case#:
                                                                COMPLAINT